# Exhibit "A"

Christian V. McOmber, Esq. - NJ ID # 012292010
    cvm@njlegal.com
Peter D. Valenzano, Esq. NJ ID # 037892010
    pdv@njlegal.com
Marco S. Collemi, Esq. – NJ ID # 378372021
    msc@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, NJ 07701
(732) 842-6500 Phone
*Attorneys for Plaintiff, Jason Pomaski*

| | |
|---|---|
| JASON POMASKI,<br><br>Plaintiff,<br><br>vs.<br><br>MICROSOFT CORPORATION; MICHAEL INDENBOM; CHADD TATE; JOHN NGUYEN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MONMOUTH COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

     Plaintiff, Jason Pomaski ("Plaintiff"), by way of Complaint against Defendant Microsoft Corporation ("Defendant Microsoft"), Defendants ABC Corporations 1-5 (fictitious names describing presently unknown business entities) (along with "Defendant Microsoft," collectively referred to as the "Corporate Defendants"), Defendant Michael Indenbom ("Defendant Indenbom"), Defendant Chadd Tate ("Defendant Tate"), Defendant John Nguyen ("Defendant Nguyen"), and Defendants John Does 1-5 (fictitious names describing presently unidentified individuals) (along with "Defendant Indenbom," "Defendant Tate," and "Defendant Nguyen"

collectively referred to as the "Individual Defendants") (the "Individual Defendants" and "Corporate Defendants" collectively referred to as the "Microsoft Defendants") alleges as follows:

## PRELIMINARY STATEMENT

This is a compelling and provable claim of disability discrimination and retaliation pled under New Jersey's broad and liberally construed Law Against Discrimination, N.J.S.A. 10:5-1, et seq., (hereinafter the "NJLAD"). Despite their repeated commitment to do so, the Microsoft Defendants refused to reasonably accommodate Plaintiff's documented and disclosed disabilities, Type II bipolar disorder, frontal lobe and executive functioning deficiency, and a traumatic brain injury. Not only did they fail to provide the cost-neutral accommodations Plaintiff requested, but they indifferently permitted Plaintiff's manager and co-workers to mock and ridicule his condition. In fact, certain co-workers doubled down and repeatedly referred to Plaintiff as "useless." This targeted campaign of reprisal was no doubt engineered to force Plaintiff to resign.

The facts conclusively reveal Plaintiff's supervisor, Defendant Indenbom, actively worked to prevent Plaintiff from succeeding within the company. Indeed, he intentionally refused to implement Plaintiff's requested accommodations for well over a year. Plaintiff repeatedly complained about these issues to human resources, who promised, but failed, to intervene. Worse, rather than address Plaintiff's, the Microsoft Defendants tried to force Plaintiff to resign. When their deliberate attempts to force his resignation failed, they reflexively Plaintiff in retaliation hiding their prevarication behind the dubious pretext of performance issues, which but for the Microsoft Defendants refusal to accommodate, would have been rectified.

Fortunately, the NJLAD provides redress for employees subjected to such treatment. Plaintiff brings this lawsuit to expose Defendants' conduct and to seek redress for disability discrimination in violation of New Jersey law.

2

## PARTIES

1.     Plaintiff is an individual residing in Monmouth County, New Jersey, who was, at all times relevant hereto directly employed by Defendant Microsoft as an Account Technology Strategist.

2.     Defendant Microsoft is a for profit corporation organized and existing under the laws of the State of Washington, with a principal place of business located at One Microsoft Way Redmond, Washington 98052. At all times relevant hereto, Defendant Microsoft is an "employer" as defined under the NJLAD.

3.     Defendant Indenbom is a resident of the State of Pennsylvania, and at all relevant times hereto, is employed by Defendant Microsoft as Plaintiff's supervisor. This claim is brought against Defendant Indenbom in his individual capacity and as an agent of Corporate Defendants who aided, abetted, and incited the Corporate Defendants' discrimination, harassment and/or retaliation against Plaintiff alleged herein. At all times relevant hereto, Defendant Indenbom is an "employer" under the NJLAD.

4.     Defendant Tate is a resident of the State of Illinois, and at all times relevant hereto, is employed by Defendant Microsoft as an Account Executive. This claim is brought against Defendant Tate in his individual capacity and as an agent of Corporate Defendants who aided, abetted, and incited the Corporate Defendants' discrimination, harassment, and/or retaliation against Plaintiff alleged herein.

5.     Defendant Nguyen is a resident of the State of Massachusetts, and at all times relevant hereto, is employed by Defendant Nguyen as an Account Executive. This claim is brought against Defendant Nguyen in his individual capacity and as an agent of Corporate Defendants who aided, abetted, and incited the Corporate Defendants' discrimination, harassment, and/or retaliation against Plaintiff alleged herein.

3

6.     Defendants ABC Corporations 1-5 are currently unidentified business entities which have acted in concert with the Corporate Defendants, and/or currently unidentified business entities responsible for the creation and/or implementation of anti-discrimination and/or anti-retaliation policies of the Corporate Defendants, and/or currently unidentified business entities which may have liability for the damages suffered by Plaintiff under any theory advanced herein.

7.     Defendants John Does 1-5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of anti-discrimination policies of Corporate Defendants and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

## FACTS COMMON TO ALL CLAIMS

8.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey specific policies prohibiting disability discrimination.

9.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures prohibiting disability discrimination.

10.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey a zero-tolerance policy when it comes to disability discrimination.

11.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures requiring an employee who believes he or she was the victim of disability discrimination to report the harassment to supervisory and management staff.

4

12.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures whereby they would engage in a timely and effective investigation of complaints of disability discrimination brought to its attention by employees.

13.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures committing them to engage in a timely and effective investigation of complaints of disability discrimination brought to their attention by employees.

14.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures committing them to undertake prompt and effective remedial measures to put a stop to any disability they found to exist.

15.     On or about November 2, 2015, Plaintiff began working for Defendant Microsoft as an Account Technology Strategist. At all times throughout his employment with Defendant Microsoft, Plaintiff worked remotely from his home in New Jersey.

16.     Throughout the tenure of his employment with Defendant Microsoft, Plaintiff performed his job responsibilities competently and diligently, loyally dedicated to Defendant Microsoft and the customers which it serves.

17.     Unfortunately, Plaintiff's optimism about the prospects of long-term employment came to a grinding halt soon after he disclosed his disabilities, with Type II bipolar disorder[1],

---

[1] Bipolar Disorder, MAYO CLINIC (Dec. 13, 2022) (bipolar disorder, formerly called manic depression, is a mental health that causes extreme mood swings that include emotional highs (mania or hypomania) and lows (depression)) https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955 (last visited July 21, 2023).

frontal lobe and executive functioning deficiency[2], and traumatic brain injury[3], and requested reasonable accommodations for same.

A.   **Plaintiff Repeatedly Requests Reasonable Accommodations For His Several Documented And Disclosed Disabilities, But The Defendants Make No Meaningful Effort To Implement Same.**

18.   In or around 2020, Plaintiff was diagnosed with Type II bipolar disorder, frontal lobe and executive functioning deficiency. This was in addition to his previous diagnoses of traumatic brain injury stemming from a snowboarding accident and a subsequent car accident.

19.   In or around July of 2020, Plaintiff formally disclosed his disabilities to Defendant Microsoft and contemporaneously submitted a formal request for accommodations for same.

20.   The Microsoft Defendants ignored Plaintiff's requests for accommodations for many months. Indeed, it was not until in or around January 2021 that the Microsoft Defendants contacted Plaintiff to discuss the accommodations he requested.

21.   At that time, Plaintiff was contacted by Defendant Microsoft's accommodations specialist, Stacey Lambert ("Ms. Lambert"), to discuss the specific accommodations Plaintiff required. Accordingly, Plaintiff requested the following specific accommodations which posed absolutely no undue burden to the Microsoft Defendants:

    a.   To be provided notes in advance for presentations, meetings, or alternatively a notetaker in meetings;

    b.   The ability to address social conflicts privately instead of in a public forum, which happened at Defendant Microsoft in the past;

---

[2] HEADWAY, the brain injury association (Executive Dysfunction effects people who suffered an injury to their prefrontal cortex, and symptoms include difficulty with motivation, organization, and flexible thinking) https://www.headway.org.uk/about-brain-injury/individuals/effects-of-brain-injury/executive-dysfunction/   (last visited July 21, 2023).

[3] Traumatic Brain Injury (TBI), NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE (Traumatic Brain Injury (TBI) can be caused by a forceful bump, or jolt to the head or body, or from an object that pierces the skull and enters the brain. Some types of TBI can cause temporary or short-term problems with normal brain function, including problems   with   how   the   person   things,   understands,   moves,   communicates,   and   acts) https://www.ninds.nih.gov/health-information/disorders/traumatic-brain-injury-tbi (last visited July 21, 2023).

c.   Plaintiff would be provided feedback in a more direct, detailed, and transparent manner that allowed Plaintiff to improve as may be necessary; and

d.   the ability to have gaps in between scheduled meetings so Plaintiff could adequately prepare for same.

22.   At the time of the meeting, Ms. Lambert agreed to provide Plaintiff with the specific accommodations requested. Unfortunately, despite Ms. Lambert's commitment, the Microsoft Defendants failed and/or refused to make a meaningful effort to implement any of the aforementioned accommodations.

23.   After several months passed without Defendant Microsoft taking any valid steps to actually implement the accommodations promised to Plaintiff, he complained about same to his supervisor, Defendant Indenbom.

24.   Specifically, Plaintiff told Defendant Indenbom the company's failure to provide Plaintiff with the eminently reasonable accommodations he requested was negatively impacting his ability to perform his job. In response to Plaintiff's complaint, Defendant Indenbom told Plaintiff his accommodations "expired."

25.   Thereafter, Plaintiff spoke with Ms. Lambert, who confirmed Plaintiff's accommodations had not "expired" and assured Plaintiff that same were, in fact, approved by Defendant Microsoft.

26.   Although Defendant Indenbom was aware of Plaintiff's approved accommodations, he failed and/or refused to implement same in order to set Plaintiff up for failure. This much is clear because, yet again, several months passed without the Microsoft Defendants and their responsible management taking any affirmative steps to implement the specific accommodations Plaintiff requested.

7

27.     Accordingly, in or around October 2022, Plaintiff scheduled another meeting with Ms. Lambert to complain about the Microsoft Defendants failure and/or refusal to provide him with the accommodations he had repeatedly requested.

28.     Ms. Lambert assured Plaintiff his accommodations were, in fact, granted, and offered Plaintiff's team the opportunity to participate in neurodiversity training in order to educate them about Plaintiff's disability.

29.     Reassured by Ms. Lambert's support and willingness to help Plaintiff as needed, Plaintiff hoped the neurodiversity training would help Defendant Indenbom understand Plaintiff's need for the requested accommodations. Nevertheless, the Microsoft Defendants, by and through their responsible management, still failed to implement any measures to help Plaintiff obtain the reasonable accommodations he required.

**B.      The Defendants Retaliate Against Plaintiff For His Request For Reasonable Accommodations, Creating An Intolerably Hostile Work Environment, Culminating In His Retaliatory Termination.**

30.     Not only did the Microsoft Defendants refuse to provide Plaintiff with the eminently reasonable accommodations he required, but thereafter, they initiated a targeted campaign of reprisal against him designed to force him from the company.

31.     To be sure, Defendant Indenbom—Plaintiff's supervisor and the individual who would be responsible for implementing Plaintiff's approved accommodations—was aware of Plaintiff's approved accommodations. However, because he viewed Plaintiff's disability as a nuisance, Defendant Indenam beenbom intentionally deprived Plaintiff these accommodations in an effort to force Plaintiff to resign, or to justify his termination.

32.     Indeed, instead of providing Plaintiff what he required, Defendant Indenbom derisively accused Plaintiff of being "unable to take feedback." Worse, he called Plaintiff's complaints of discrimination a "waste of time."

8

33.     Defendant Indenbom also attempted to set Plaintiff up for failure by giving him illegitimate, negative feedback in performance reviews in order to make Plaintiff's performance appear worse than it actually was.

34.     For example, in or around September 2022, Defendant Indenbom gave Plaintiff an objective to "build a strategy and drive impact in closing at least 1 E5 win." After giving Plaintiff this objective for the following quarter, Defendant Indenbom promised Plaintiff he would provide him with better feedback in subsequent performance reviews.

35.     Plaintiff attained this goal. However, when it came time for Plaintiff's subsequent performance review, Defendant Indenbom gave Plaintiff the very same negative feedback from his September 2022 performance review.

36.     Defendant Indenbom's harassing behavior emboldened other co-workers to torment Plaintiff as well. For example, Defendant Tate, an Account Executive for Defendant Microsoft, began to berate Plaintiff by calling him "useless" because of Plaintiff's disabilities and requested accommodations.

37.     Worse, Defendant Tate publicly shamed Plaintiff in front of his co-workers, telling Plaintiff he was "useless" and that Plaintiff "had no idea what he was still doing working for [Defendant] Microsoft.".

38.     Another Account Executive, Defendant Nguyen, would mock Plaintiff and claim he had a "lack of focus" in several team meetings and communications throughout Plaintiff's employment simply because he was aware that Plaintiff suffered from certain disabilities and requested reasonable accommodations for same.

39.     Then, on or around November 07, 2022—after the Microsoft Defendants' concerted efforts to force Plaintiff to resign proved to be unsuccessful—they approached him with an offer of voluntary separation.

40.    To be sure, Plaintiff did not want to resign and did not request a separation agreement.    However, the Defendants decided rather than provide Plaintiff the eminently reasonable accommodations he required, they would rather coax Plaintiff into resignation by offering him a financial incentive to resign from his employment.

41.    On November 09, 2022, just two (2) days after being provided with the voluntary separation agreement, Ms. Lambert informed Plaintiff that his requested accommodations were allegedly approved—**again**.

42.    Specifically, Ms. Lambert told Plaintiff that he would be provided with the following accommodations:

        a.    Notes in advance of presentations/meetings or summary notes;

        b.    Detailed feedback on Plaintiff's performance in a direct, detailed, and transparent way; and

        c.    Neurodiversity team training to help Plaintiff's co-workers understand the need for Plaintiffs' requested accommodations.

43.    Plaintiff relied on Ms. Lambert's representation that his accommodations would be provided and declined the voluntary separation package.    However, perhaps unsurprisingly, the Microsoft Defendants still failed and/or refused to implement Plaintiff's approved accommodations for another four (4) months.

44.    Finally, in or around March 2023, the Microsoft Defendants provided Plaintiff's team training on neurodivergence, allegedly designed to help educate Plaintiff's team on his disabilities and why his requested accommodations were "provided."

45.    On two (2) separate occasions, Plaintiff asked to meet with the trainer conducting the meeting to review the curriculum to discuss and make sure Plaintiff's unique challenges would be discussed in the training, to no avail.    In fact, for no reason other than to discriminate against

Plaintiff because of his disabilities, the Microsoft Defendants outright refused to provide Plaintiff the opportunity to meet with the trainer.

46.     Predictably, the "training" provided was a complete sham, as it focused exclusively on autism and only briefly mentioned general neurodiversity. Furthermore, the "training" focused the attention of the team squarely on Plaintiff, and not on the unique challenges faced by individuals with disabilities like Plaintiff.

47.     Accordingly, on March 20, 2023, Plaintiff complained to Defendant Microsoft's Human Resources department about the company's failure to provide effective training and how it only served to humiliate Plaintiff in front of his colleagues.

48.     Plaintiff's complaint email reads, in pertinent part: **"the way [the training] was presented, to an audience of my peers, put me in the uncomfortable position of feeling forced to divulge more information about my disability than I was comfortable with. Effectively, it turned the attention of the training to me, singled me out, and made me very uncomfortable to sit through."**

49.     Plaintiff further explained the discrimination and retaliation he was dealing with continued to the present date, and begged the Defendants to provide him the accommodations which were allegedly "approved." In that regard, Plaintiff wrote, **"The constant refusal to give me the accommodations the company approved makes it incredibly difficult to do my job duties. To be clear, I want to continue working at Microsoft. I just want to make sure the reasonable accommodations which I was promised I would receive are actually being delivered because they will be a HUGE help at no cost to the company."**

50.     Again, Plaintiff's complaints of discrimination were once again ignored, and no remedial measures were taken.

11

51.     Then, on July 17, 2023, after the Microsoft Defendants refused to provide Plaintiff with the accommodations which were allegedly "approved," the Microsoft Defendants decided they were left with no choice but to terminate Plaintiff's employment to silence his complaints and repeated requests for accommodations.

52.     The Microsoft Defendants claim that Plaintiff's termination was the result of "performance issues." However, this is nothing more than pretext for the Microsoft Defendants' true, discriminatory and retaliatory motive ---- disability discrimination.

## COUNT ONE

## NJLAD – DISCRIMINATION AND HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY

53.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

54.     Plaintiff was subjected to discrimination and wrongful termination on the basis of his disability by Defendants.

55.     Corporate Defendants did not have effective anti-discrimination policies in place, Corporate Defendants have not maintained anti-discrimination policies that are current and effective, and Corporate Defendants' anti-discrimination policies existed in name only.

56.     Corporate Defendants did not maintain useful formal and informal complaint structures for victims of discrimination.

57.     Defendants did not properly train their supervisors and/or employees on the subject of discrimination.

58.     Corporate Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of their policies and complaint structures regarding discrimination.

59.     Defendants did not have a commitment from the highest levels of management that discrimination will not be tolerated.

12

60.     As a result of the above discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and has suffered significant economic damages.

61.     As Plaintiff's employer, Corporate Defendants are vicariously, strictly, and/or directly liable to the Plaintiff pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., in that Defendants subjected Plaintiff to discriminatory adverse employment actions; and/or the affirmative acts discrimination committed by Individual Defendants and by Plaintiff's supervisors occurred within the scope of their employment; and/or Defendants were deliberately indifferent, reckless, negligent, and/or tacitly approved the discrimination; and/or the acts of discrimination were aided by Corporate Defendants in delegating power to Individual Defendants to control the day-to-day working environment; and/or Corporate Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of discrimination in the workplace; and/or Defendants had actual knowledge of the discrimination against Plaintiff and failed to promptly and effectively act to stop it.

62.     Individual Defendants and/or other individuals yet to be identified aided, abetted, incited, compelled and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce Defendants to commit acts and omissions that were in violation of the LAD by committing affirmatively discriminatory acts towards Plaintiff in violation of the supervisory duty to halt or prevent discrimination, rendering all Defendants individually and collectively liable to Plaintiff pursuant to N.J.S.A. 10:5-12(e).

63.     As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

13

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.  Reinstatement of employment and all benefits;

B.  Back pay and benefits;

C.  Front pay and benefits;

D.  Compensatory damages;

E.  Consequential damages;

F.  Reinstatement;

G.  Punitive damages;

H.  Prejudgment interest and enhancements to off-set negative tax consequences;

I.  Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.  Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K.  Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.  Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.  Ordering Defendants to undergo anti-discrimination training;

N.  Ordering Defendants to undergo anti-retaliation training;

O.  Ordering Defendants to undergo anti-harassment training;

P.  Ordering Defendants to undergo workplace civility training;

Q.  Ordering Defendants to undergo bystander intervention training;

R.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.  Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.  Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

> X.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
> Y.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and
> Z.    Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

## NJLAD – DISABILITY DISCRIMINATION: FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

64.    Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

65.    The conduct of Defendants as detailed above constitutes disability discrimination, specifically the failure to reasonably accommodate disabled persons, and the failure to engage in the interactive process required by New Jersey law.

66.    Namely, Corporate Defendants did not reasonably accommodate Plaintiff's disabilities, nor did Corporate Defendants engage in the interactive process with Plaintiff regarding his accommodations.

67.    As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the LAD, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

> A.    Reinstatement of employment and all benefits;
> B.    Back pay and benefits;
> C.    Front pay and benefits;
> D.    Compensatory damages;
> E.    Consequential damages;
> F.    Reinstatement;

15

G.    Punitive damages;

H.    Prejudgment interest and enhancements to off-set negative tax consequences;

I.    Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K.    Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.    Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.    Ordering Defendants to undergo anti-discrimination training;

N.    Ordering Defendants to undergo anti-retaliation training;

O.    Ordering Defendants to undergo anti-harassment training;

P.    Ordering Defendants to undergo workplace civility training;

Q.    Ordering Defendants to undergo bystander intervention training;

R.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.    Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.    Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.    Such other relief as may be available and which the Court deems just and equitable.

## COUNT THREE

## NJLAD – RETALIATION/IMPROPER REPRISAL

68.    Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

69.    Defendants took retaliatory action against Plaintiff by subjecting him to

harassment, disparate treatment, and ultimately terminating his employment.

70.   Plaintiff requested accommodations as a direct result of his disabilities and complained about disability discrimination, as alleged herein.

71.   Corporate Defendants knew of Plaintiff's actual disabilities and knew of Plaintiff's request for reasonable accommodations.

72.   Plaintiff was terminated from his employment because of his request for reasonable accommodations for his disabilities and complaints of disability discrimination.

73.   Causal links exist between Plaintiff's disability and accommodations and Defendant Microsoft's termination of Plaintiff's employment.

74.   Defendants are vicariously, strictly, and/or directly liable to Plaintiff for an unlawful retaliatory discharge in violation of the LAD pursuant to N.J.S.A. 10:5-12(d).

75.   As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.   Reinstatement of employment and all benefits;
B.   Back pay and benefits;
C.   Front pay and benefits;
D.   Compensatory damages;
E.   Consequential damages;
F.   Reinstatement;
G.   Punitive damages;
H.   Prejudgment interest and enhancements to off-set negative tax consequences;
I.   Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set

negative tax consequences and/or enhancements otherwise permitted under law);

J.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K.    Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.    Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.    Ordering Defendants to undergo anti-discrimination training;

N.    Ordering Defendants to undergo anti-retaliation training;

O.    Ordering Defendants to undergo anti-harassment training;

P.    Ordering Defendants to undergo workplace civility training;

Q.    Ordering Defendants to undergo bystander intervention training;

R.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.    Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.    Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.    Such other relief as may be available and which the Court deems just and equitable.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to Rule 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

18

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Jason Pomaski*

By: */s/ Peter D. Valenzano*
        PETER D. VALENZANO, ESQ.

Dated: July 21, 2023

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>Rule</u> 4:25-4, PETER D. VALENZANO, ESQUIRE, is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to <u>Rule</u> 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Jason Pomaski*

By: */s/ Peter D. Valenzano*
        PETER D. VALENZANO, ESQ.

Dated: July 21, 2023

Christian V. McOmber, Esq. - NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. NJ ID # 037892010
  pdv@njlegal.com
Marco S. Collemi, Esq. – NJ ID # 378372021
  msc@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, NJ 07701
(732) 842-6500 Phone
*Attorneys for Plaintiff, Jason Pomaski*

| | |
|---|---|
| JASON POMASKI,<br><br>                            Plaintiff,<br><br>           vs.<br><br>MICROSOFT            CORPORATION; MICHAEL INDENBOM; CHADD TATE; ABC   CORPORATIONS   1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious   names   describing   presently unidentified individuals),<br><br>                            Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MONMOUTH COUNTY<br><br>DOCKET NO.:<br><br>            Civil Action<br><br>**FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

## FIRST SET OF DOCUMENT REQUESTS, INTERROGATORIES, PUNITIVE DAMAGES, AND DEPOSITION NOTICES TO DEFENDANT(S)

**PLEASE TAKE NOTICE** that, McOmber McOmber & Luber, P.C., attorneys for Plaintiff Jason Pomaski ("Plaintiff") demand that Defendants Microsoft Corporation, Michael Indenbom, and Chadd Tate (collectively "Defendants") produce true and complete copies of the following Document Requests and answer under oath the following Interrogatories pursuant to the Rules of Court. Interrogatories answers shall be typed beneath the questions and the original shall be returned in accordance with *Rule* 4:17-4(c) and, if at any time prior to trial, you obtain information which renders any answer you provide incomplete or inaccurate, amended answers

20

shall be served pursuant to *Rule* 4:17-7. Both the Document Request and Interrogatories shall be continuing so as to require supplemental responses and/or answers if Defendant(s) obtain(s) further documents or information between the time the response is served and the time of trial/hearing.

### DEFINITIONS

1.      "Plaintiff" shall mean, individually and collectively, each Plaintiff identified in the above-captioned action.  If more than one Plaintiff is identified in the caption as a party to this lawsuit, Defendants must respond to each request with specific responses applicable to each Plaintiff in this lawsuit.

2.      "Defendant Microsoft" shall mean Microsoft Corporation and any of its officers, directors, employees, agents, representatives, successors, predecessors, assigns, divisions, affiliates, subsidiaries, and all persons acting or purporting to act on its behalf.

3.      "Defendant Indenbom" shall mean Michael Indenbom, Defendant in the above-captioned action.

4.      "Defendant Tate" shall mean Chadd Tate, Defendant in the above-captioned action.

5.      "Defendant(s)" shall individually and collectively mean all Defendants in the above-captioned action.

6.      The term "Corporate Defendant(s)" shall individually and collectively any Defendant company, corporation, partnership, union, joint venture, sole proprietorship, association, government agency, or organization, or any other similar type of group through which business is conducted, or any director, officer, employee, or agent thereof.

7.      The term "Individual Defendant(s)" shall mean any defendant in this matter sued in his/her individual capacity or as an agent/servant of any Corporate Defendant.

8.      The terms "you," "your," or "yours" shall mean the party answering these interrogatory questions.

21

9.      "Entity" shall mean any company, corporation, partnership, union, joint venture, sole proprietorship, association, government agency, or organization, or any other similar type of group through which business is conducted, or any director, officer, employee, or agent thereof.

10.     "Person" shall mean any natural Person, partnership, corporation, or other business entity and all present and former officers, directors, agents, employees, attorneys and others acting or purporting to act on behalf of such natural Person, partnership, corporation or other business entity.

11.     The term "Action" shall mean the civil action captioned above.

12.     The "Complaint" shall mean the Complaint filed by Plaintiff(s) in this Action.

13.     The term "Answer" shall mean any Answer to the Complaint filed by any party in this Action, which specifically includes all Affirmative Defenses, Denials, and Counterclaims, and was filed with the Court in the above-captioned Action.

14.     The term "Investigation" shall mean any investigation, inquiry, analysis, review, examination, research, study, interview, interrogation, and/or collection of evidence, statements (oral or written), and documents.

15.     The term "Grievance" shall mean any complaint, grievance, accusation, allegation, protest, and/or objection (formal or otherwise) by Plaintiff(s) or any Person concerning any of the Defendant(s) and Plaintiff.

16.     "Document" or "documents" is defined in accordance with New Jersey Court *Rule* 4:18-1 and includes the original and any identical or non-identical copy, regardless of origin or location, of any written, reported, filmed, magnetically stored, or graphic matter, or record of any type or description, whether produced, reproduced, or producible on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including, but not limited to, memoranda, notes, minutes, records photographs, computer programs, correspondence, telegrams,

diaries, bookkeeping entries, specifications, source code, object code, flow charts, financial statements, charts, studies, reports, graphs, statements, notebooks, handwritten notes, application, feasibility studies, agreements, books, pamphlets, periodicals, appointment calendars, notes, records and recordings of oral conversations or voicemails, emails, inter-office or intra-office communications, handwritten or other notices, diaries, invoices, purchase orders, bills of lading, work papers, and also including, but not limited to, originals and all copies which are different from the original, whether by interlineation, receipt stamp, notation, indication of copy sent or received, or otherwise, and drafts, which are in the possession, custody or control of the present or former agents, representatives, employees, or attorneys of Defendant(s), or all persons acting on Defendant(s)' behalf, including documents at any time in the possession, custody or control of such Individuals or entities who are known by Defendant(s) to exist. Include any catalog, brochure, or any other data compilations from which information can be obtained and translated if necessary, or any other written, recorded, stored, transcribed, punched, taped, filed or graphic matter however produced or reproduced, to which Defendant(s) have or have had access.

17.     The term "communication" means any conversation, correspondence, discussion, meeting, message, record of phone calls, or other occurrence in which data, conclusions, information, opinions, or thoughts are exchanged between two or more persons, whether it be written, oral, or electronically transmitted.

18.     The terms "all" and "any" shall both be construed as "any and all."

19.     The terms "and," "or," and "and/or" shall be construed in both the disjunctive and conjunctive to permit the broadest possible reading of the request so as to bring within the scope of the request documents and other material that might otherwise be construed to be outside the request.

23

20.      The term "concerning" means concerning, comprising, constituting, containing, commenting on, dealing with, describing, discussing, embodying, evidencing, illustrating, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, or supporting in any way, either directly or indirectly.

21.      The phrases "relating to" or "relate to" or "relates to" or "refer to" or "refers to" or "referred" or "relating to" and/or "regarding" shall be construed in the broadest possible sense to mean, *inter alia*, concerning, referring to, embodying, constituting, describing, connected with, commenting on, responding to, evidencing, identifying, supporting, contradicting, rebutting, pertaining to, and/or relating in any way.

22.      The term "including" or "include" shall mean "including without limitation."

23.      Masculine forms of any noun or pronoun shall embrace and be read to include the feminine or neuter, as the context may make appropriate.

## INSTRUCTIONS

1.      In addition to the specific instructions enumerated below, the following Document Requests and Interrogatories shall be subject to the New Jersey Rules of Court.

2.      If more than one Plaintiff is identified in the caption as a party to this lawsuit, Defendant(s) must respond to each request with specific responses applicable to each Plaintiff in this lawsuit.

3.      When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and last known place of employment.

4.      These Document Requests and Interrogatories shall be deemed continuing in nature so as to require prompt supplementation if, as, and when obtain additional information.

5.      If anyone identified in response to any of the Document Requests and/or Interrogatories was formerly, but is no longer, employed by you, please so state in the answer and

24

provide the former employee's current address and telephone number (business or home), if known. If the current address and telephone number are not known, then please provide the former employee's last known address and telephone number.

6.      You shall be under a continuing obligation to supplement answers to the Document Requests and Interrogatories.

7.      If you cannot respond to any of the following Document Requests and/or Interrogatories in full after exercising due diligence to secure the information to do so, then respond to the extent possible and explain your inability to provide a complete answer. State whatever information or knowledge you have about the unanswered portion of any Document Request and/or Interrogatories.

8.      Whenever a Document Request and Interrogatories asks for a date, state the exact day, month and year, if ascertainable or, if not, the best approximation thereof.

9.      Documents shall be produced in their original state (i.e., in their original file folders in the exact order as found) without removal or rearrangement of anything contained therein.

10.     Each document request that seeks information relating in any way to communications to, from, or within a business or entity is hereby designated to mean, and should be construed to include, all communications by and between that business and/or entity's present or former representatives, employees, agents, and servants of the business and/or entity.

11.     All documents shall be organized and labeled to correspond with the numbered paragraphs of these document requests. If there are no documents responsive to a particular document request, Defendant(s) shall so state in writing.

12.     All electronically stored information shall be produced in a reasonably usable form, and it shall not be converted from the form in which it is ordinarily maintained to a different form that would make it more difficult or burdensome for Plaintiff to use such information.

13.     In the event that any document or portion thereof is withheld on the basis of any privilege or otherwise claimed to be protected against production, such document shall be identified by stating:  (a) the nature of the privilege or reason for withholding which Defendant(s) contend applied; (b) the factual basis for Defendant(s)' assertion of privilege or the reason for withholding; (c) the type of document (e.g., letter, memorandum, etc.); (d) all authors and addressees; (e) all indicated and blind copies; (f) all persons to whom the document was distributed, shown, or explained; (g) the document's date; (h) a summary description of the document's subject matter; (i) the number of pages and attachments or appendices comprising the document; and (j) its present custodian.

14.     Whenever a claim of privilege concerns any oral communication or statement, identify the participants to the communication and the person giving and receiving the statement, and set forth the date and place of the communication or statement and state the general subject matter thereof and state the basis for the claim of privilege.

15.     If any document was, but is no longer, in Defendant(s)' possession, or subject to Defendant(s)' control, or in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has been otherwise disposed of.  In each instance, explain the circumstances surrounding any such disposition, including the authorization of the disposition, the date of destruction or discard, the manner of destruction or discard and reason for destruction or discard, the persons who authored and carried out such destruction or discard, whether any copies of the document presently exist, and, if so, the name of the custodian of each copy.

16.     An objection or claim of privilege directed to part of a request does not constitute an excuse for failure to respond to the parts of the Document Request and/or Interrogatories for which no objection to claim of privilege is made.

17.     If a refusal to answer a Document Request and/or Interrogatories is based on the grounds that the request is overly burdensome, identify the number and nature of documents needed to be searched.

18.     Punitive Requests relate to Corporate Defendant(s)' financial condition for purposes of punitive damages. "Case law recognizes the Defendant's financial condition as a relevant factor in all punitive-damage awards." *Herman v. Sunshine Chemical Specialties, Inc.*, 133 N.J. 329, 339, (1993). In order to properly determine the appropriate punitive damage award amount, the trier of fact "must consider evidence of the Defendant's financial condition." *Id.* at 342. "The degree of punishment resulting from a judgment must be, to some extent, in proportion to the means of the guilty person. *Restatement (Second) of Torts* 908 comment d (1977)." *McDonough v. Jorda*, 214 N.J. Super. 338, 349 (1986), *certif. denied*, 110 N.J. 302, (1988) *cert. denied*, 489 U.S. 1065 (1989).

## DOCUMENT REQUESTS TO DEFENDANT(S)

1.     All documents relating to any insurance policy or reinsurance policy that may be used to pay all or part of any judgment entered against Defendant(s) in this Action.

2.     A complete copy of the personnel file Defendant(s) maintained pertaining to Plaintiff, including but not limited to copies of documents (written or electronic) relating to the following: (a) medical records and reports; (b) pay and benefits provided to Plaintiff; (c) attendance, sick time, disability time, personal time and/or vacation time; (d) commendations and/or performance reviews regarding Plaintiff; (e) job title or job status changes; (f) documents relating to any leave of absence; and (g) employer policy information provided to Plaintiff, if any.

3.     Limited portions of the personnel file(s) Defendant(s) maintained pertaining to any Individual Defendant, including but not limited to copies of documents (written or electronic) relating to the following: (a) disciplinary action (i.e., oral reprimand, written reprimand,

27

suspension, demotion, loss of pay, termination) being taken against any Individual Defendant;
(b) performance evaluations that were conducted for any Individual Defendant; and (c) job title or
job status changes for any Individual Defendant.

      4.     Limited portions of the personnel file(s) Defendant(s) maintained pertaining to
Stacey Lambert, including but not limited to copies of documents (written or electronic) relating
to the following: (a) disciplinary action (i.e., oral reprimand, written reprimand, suspension,
demotion, loss of pay, termination) being taken against Stacey Lambert; (b) performance
evaluations that were conducted for Stacey Lambert; and (c) job title or job status changes for
Stacey Lambert.

      5.     All documents and electronic data that relate to, refer to, discuss, or memorialize
the Plaintiff's hiring.

      6.     All documents and electronic data that relate to, refer to, discuss, or memorialize
the termination, demotion, suspension, separation, and/or resignation of Plaintiff.

      7.     All statements, documents, or communications relating to any complaints made by
the Plaintiff.

      8.     Produce a copy of Defendant(s)' written policy concerning harassment.

      9.     Produce a copy of Defendant(s)' written policy concerning retaliation.

      10.     Produce a copy of Defendant(s)' written policy concerning discrimination.

      11.     Produce a copy of Defendant(s)' written policy concerning providing reasonable
accommodations for employees' disabilities.

      12.     Produce a copy of Defendant(s)' written policy concerning progressive discipline.

      13.     All statements, documents, or communications relating to anti-harassment, anti-
discrimination, and/or anti-retaliation training or education completed by Defendant(s).

28

14.    All statements, documents, or communications concerning any Investigation that relates to the claims and defenses asserted in this Action.

15.    A copy of all documents (written or electronic) relating to each and every instance since January 01, 2012, in which an allegation was made and/or a lawsuit filed alleging that Defendant(s) engaged in improper retaliation and/or reprisal in violation of New Jersey's Law Against Discrimination. For each and every such instance, identify the person(s) who made the allegation, the person(s) against whom the allegation was made, the date of the behavior complained of, the date the complaint was made, the nature of the behavior complained of, and how, if any way, you investigated, handled, processed, and/or ultimately disposed of each and every such matter.

16.    A copy of all documents (written or electronic) relating to each and every instance since January 01, 2012, in which an allegation was made and/or a lawsuit filed alleging that Defendant(s) engaged in improper retaliation and/or reprisal in violation of New Jersey's Conscientious Employee Protection Act. For each and every such instance, identify the person(s) who made the allegation, the person(s) against whom the allegation was made, the date of the behavior complained of, the date the complaint was made, the nature of the behavior complained of, and how, if any way, you investigated, handled, processed, and/or ultimately disposed of each and every such matter.

17.    All statements, documents, or communications concerning or made by any person that relate to the allegations asserted in the Complaint.

18.    All statements, documents, or communications relating to statements of witnesses provided to and/or obtained by Defendant(s) that relate to this Action.

29

19. All statements, documents, or communications concerning or made by any Person (including any of Defendant(s)' employees or coworkers) that relate to the defenses, affirmative defenses, and/or denials asserted in the Answer.

20. All statements, documents, or communications concerning any agreement or contract between the Plaintiff and Defendant(s).

21. All statements, documents, or communications concerning any Person who has knowledge and/or information relating to this Action.

22. All statements, documents, or communications between the Plaintiff and Defendant(s) that relate to this Action.

23. All statements, documents, or communications concerning any admissions by or of Defendant(s) that relate to this Action.

24. All statements, documents, or communications concerning any of Defendant(s) denials of the allegations set forth in the Complaint.

25. All documents any expert who may testify on Defendant(s) behalf and which Defendant(s) intend to use or may rely upon at trial.

26. Copies of all books, documents, drawings, plans, photographs or other tangible things upon which Defendant(s) will rely in support of its defenses.

27. All statements, documents, or communications relating to any Grievance made by any non-party to this action concerning Defendant(s).

28. All documents Defendant(s) intend to use for any purpose in this litigation, including, but not limited to the data it intends to use in depositions or at trial.

29. All reports (including drafts) relating to any Investigation concerning Defendant(s) and/or the Plaintiff.

30. Any reports relevant to this matter written by an expert utilized by Defendant(s).

31.     Copies of any and all books, treatises, pamphlets or other printed material upon which Defendant(s) or any experts retained by Defendant(s) will rely, including using as an exhibit at trial.

32.     All documents concerning any employee Grievances against Defendant(s) for the past ten (10) years.

33.     Copies of any photographs, video, text messages, iMessages, emails or other medium with regard to any communications between Defendant(s) and Plaintiff.

34.     Copies of any photographs, video, text messages, iMessages, emails or other medium with regard to any communications between Defendant(s) and Defendant(s)' agents, servants or representatives referring and/or relating to the subject matter of this litigation.

35.     A written job description for each position that Plaintiff held during Plaintiff's employment with Corporate Defendant(s).

36.     A written job description for each position held by any Individual Defendant or any employee or agent of Defendant(s) during his/her tenure of employment with Corporate Defendant(s).

37.     All statements, documents, or communications concerning any communication between Defendant(s) and Defendant(s)' Human Resources department regarding Plaintiff.

38.     All documents identified or referenced in Defendant(s)' Answers to Plaintiff's First Set of Interrogatories to Defendant(s).

39.     Produce a copy of the employee handbook in force and effect at the time of the Plaintiff's employment with Defendant(s).

40.     All documents relating to Corporate Defendant(s)' policy or policies concerning electronic data retention and preservation.

31

41.    All documents relating to any employee benefits or benefit plan in which the Plaintiff was/were eligible to participate during his/her employment with Defendant(s).

42.    All documents or electronic data relating, reflecting, or referring to Defendant(s) policy or policies concerning employees' use of desktops and/or laptops (whether in office or remote locations) and management, preservation and/or deletion of data on such laptops.

43.    All documents or electronic data relating, reflecting, or referring to Defendant(s) ability to restore archived electronic data relating to the Plaintiff's employment contained on electronic media such that upon restoration it may be accessed, viewed, exported or printed.

44.    All statements, documents, or communications concerning any investigation concerning discrimination, harassment, hostile work environment and unfair favoritism complaints by employees and/or clients of Defendant(s) that relates to Defendant(s).

45.    All statements, documents, or communications concerning any occasion in which Defendant(s) reprimanded or disciplined Plaintiff.

46.    All statements, documents, or communications concerning Defendant(s) receiving any sensitivity training or any training regarding appropriate workplace language and conduct.

## INTERROGATORIES TO DEFENDANT(S)

1.    State with specificity each and every legitimate, non-discriminatory reason for why Defendants terminated Plaintiff's employment and the factual basis for the same.

2.    Identity each and every individual who was involved in the decision to terminate Plaintiff's employment and describe each individual's role and input in the decision.

3.    Identity the date, time and location of any meetings where the decision regarding whether to terminate Plaintiff's employment was discussed and identify each and every individual present at the meeting.

4.    Identify each individual(s) who performed any of Plaintiff's job duties and/or

32

responsibilities after his/her termination of employment from Defendants.

    5.    Indicate whether the individual or individuals certifying these Interrogatory answers had the opportunity to review the typed responses.

    6.    State the name, last known address, and last known telephone number of all persons who have knowledge of facts relating in any way to this matter and specify the subject matter of each such person's knowledge.

    7.    State the name, last known address, and last known telephone number of each person whom Defendant(s) may expect to call as a witness at trial and indicate those facts to which each such witness is expected to testify.

    8.    State the names and business addresses of any and all proposed expert witnesses whom Defendant(s) have retained for this matter.

    9.    With respect to each proposed expert witness referred to in the preceding Interrogatory, provide the following:

    a.    field of expertise;
    b.    educational background;
    c.    the names of any and all books, periodicals, or other writings that he or she has written or to which he or she has contributed;
    d.    the date, time, and place at which any oral opinion was rendered, specifying to whom that opinion was rendered and describing the content of that opinion;
    e.    true and accurate copies of any and all written reports or opinions, including drafts;
    f.    the name, last known address, last known telephone number, job title, and current employer of each person with whom the expert has met in connection with formulating his or her opinion or preparing his or her report(s);
    g.    true and accurate copies of any and all documents that the expert created, obtained, or reviewed in connection with the formulation of his or her opinion or the preparation of his or her report(s);
    h.    all tangible things upon which your expert(s) may rely as an exhibit at trial and identify the name and address of the person in whose custody the above identified tangible things are at the present time and;
    i.    if any such reports, either written or oral, subsequently become known to you or become available, submit copies thereof to supplemental answers to these Interrogatories.

10.  With respect to each proposed expert witness referred to in the preceding Interrogatory, set forth in summary form the substance of the opinion to which each is expected to testify, including a summary of grounds for each opinion.

11.  Identify the names and addresses of any persons other than those named in the preceding three Interrogatories, who have been retained, specifically employed, or consulted by Defendant(s) in anticipation of litigation or preparation for trial and who may not be called as witnesses at trial and as to each:

      a.    state the subject matter on which he/she was consulted;

      b.    state his/her field of expertise;

      c.    set forth the full and detailed qualifications, training, professional and practical experience, education and degree obtained by such person. (As to each item listed in the answer to this Interrogatory, set forth the dates and/or years of same, as well as the names and addresses of each institution attended; furthermore, set forth the nature of each place at which experience or training was received);

      d.    attach to the answers to these Interrogatories copies of all written reports submitted to you (or detailed resume if report was oral) of each such expert;

      e.    state whether or not there are any other reports in existence from the particular experts named, either written or oral (if any such reports, either written or oral, subsequently become known to you, or become available, submit copies thereof of supplemental answers to these Interrogatories);

      f.    set forth completely all expert opinions rendered by the named expert(s) which are not in writing;

      g.    identify each document that has been relied upon by each expert witness in the formulation of his or her opinion; and

      h.    state a summary of the grounds for each opinion.

12.  List chronologically each job title held by the Plaintiff while employed by any Defendant(s) indicating the time period during which each position was held.

13.  For any position held by the Plaintiff while employed by Defendant(s) for which there is no job description, describe with specificity the job functions of each such position to the best of Defendant(s)' knowledge.

14.  State the required qualifications and skills for each and every job title that the Plaintiff held while employed by any Defendant(s).

15.    State whether the Plaintiff was/were ever promoted while employed by any Defendant(s). For each promotion, state the following:

      a.    from what position or job title the promotion was from and to what position or job title the promotion was to;

      b.    the date of the promotion;

      c.    the reason(s) for the promotion;

      d.    the names, last known addresses, last known telephone numbers, and job titles, of all persons involved in the decision-making process and the nature and extent of their involvement in the decision;

      e.    the criteria used in making the decision; and

      f.    identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

16.    State whether the Plaintiff was/were ever demoted while employed by any Defendant(s). For each demotion, state the following:

      a.    from what position or job title the demotion was from and to what position or job title the demotion was to;

      b.    the date of the demotion;

      c.    the reason(s) for the demotion;

      d.    the names, last known addresses, last known telephone numbers, and job titles, of all persons involved in the decision-making process and the nature and extent of their involvement in the decision;

      e.    the criteria used in making the decision; and

      f.    identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

17.    List chronologically each job title held by Defendant(s) while employed by any Defendant(s), indicating the time period during which each position was held.

18.    For any position held by Defendant(s) while employed by any Defendant(s) which there is no job description, describe with specificity the job functions of each such position to the best of Defendant(s)' knowledge.

19.    State the required qualifications and skills for each and every job title that Defendant(s) held while employed by any Defendant(s).

20.    State whether Defendant(s) was/were ever promoted while employed by any Defendant(s). For each promotion, state the following:

    a.    from what position or job title the promotion was from and to what position or job title the promotion was to;

    b.    the date of the promotion;

    c.    the reason(s) for the promotion;

    d.    the names, last known addresses, last known telephone numbers, and job titles, of all persons involved in the decision-making process and the nature and extent of their involvement in the decision;

    e.    the criteria used in making the decision; and

    f.    identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

21.    State whether Defendant(s) were ever demoted while employed by any Defendant(s). For each demotion, state the following:

    a.    from what position or job title the demotion was from and to what position or job title the demotion was to;

    b.    the date of the demotion;

    c.    the reason(s) for the demotion;

    d.    the names, last known addresses, last known telephone numbers, and job titles, of all persons involved in the decision-making process and the nature and extent of their involvement in the decision;

    e.    the criteria used in making the decision; and

    f.    identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

22.    State the full name of each manager that worked with or oversaw the Plaintiff.

23.    Identify and provide full details concerning any Investigation relating to the allegations and claims in the Complaint, including but not limited to who was questioned or interviewed, what was discovered, and what corrective action was taken. Identify those who Defendant(s) contacted or assigned to conduct each specific investigation or inquiry, who was questioned, what was discovered, and what corrective action was taken to the best of Defendant(s)' knowledge. Provide copies of any examinations, audits, findings, reports, or notices in Individual Defendant(s)' possession.

24.    Identify and provide full details concerning any Investigation relating to any denials or defenses asserted in the Answer, including, but not limited to who was questioned or interviewed, what was discovered, and what corrective action was taken.

25.   Identify all persons employed by Defendant(s) who are responsible for Human Resources, personnel matter, training, orientation, and personnel monitoring for the previous five (5) years to the best of Defendant(s)' knowledge.

26.   State whether any Defendant(s) received or went through an orientation program when he/she was hired to work at Defendant(s) and describe said program.  If so:

      a.     provide a description of the system(s) or procedure(s) used for orientation for the past five (5) years; and

      b.     identify and produce all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

27.   Identify and provide full details concerning all harassment and discrimination prevention training conducted by Defendant(s) in the past five (5) years.

28.   In connection with Defendant(s)' response to the preceding Interrogatory, provide full details of such training including the dates, and provide any written materials used in such training.  If the training was provided by a third party, please forward the third party's name, business address, and last known phone number, together with the third party's qualifications to perform such training.

29.   State whether any civil or criminal actions have ever been filed charging Defendant(s) with harassment, discrimination and/or retaliation in the past ten (10) years.  This includes, but is not limited to all judicial, administration, and/or arbitration hearings.  If so, provide the following for each such action:

      a.     the name, last known address, last known telephone number, and job title of the complainant(s);
      b.     the title of the action;
      c.     the name and address of the court where the action was filed;
      d.     the docket number of the action;
      e.     the date on which the action was filed;
      f.     the nature and substance of the action;
      g.     the disposition or present status of the action;
      h.     whether the case was tried and, if so, the verdict;
      i.     the amount of punitive damages, if any;
      j.     the amount of compensatory damages, if any; and

      k.     identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

30.     Please describe in detail complaints or Grievances (formal or otherwise) made by the Plaintiff with regard to discrimination, harassment, hostile workplace environment, and/or unfair favoritism regarding fellow employees and/or Defendant(s).

31.     Describe, in detail, all complaints or Grievances (formal or otherwise) by any employees of Defendant(s) relating to discrimination, harassment, hostile workplace environment and/or unfair favoritism by Defendant(s) in the past ten (10) years.

32.     Describe, in detail, the investigation, determination and/or disciplinary actions taken by Defendant(s) relating to all complaints or Grievances of discrimination, harassment, hostile workplace environment and/or unfair favoritism by Defendant(s) in the past ten (10) years.

33.     Describe, in detail, the facts and circumstances relating to the method and process by which complaints or Grievances are handled and resolved with the Human Resources Departments (or similar departments) at Defendant(s).

34.     Describe in detail the factual basis for each of Defendant(s) denials of the allegations of the Complaint.

35.     Are there any documents that Defendant(s) know or believe to be in existence, although not in Defendant(s)' possession or control, that in any way relate to the subject matter of this litigation? If so, identify each such document, set forth the source of Defendant(s)' information or belief regarding the existence of such document, and identify the person or entity in whose possession or control such document is known or believed to be.

36.     Have any admissions been made by party or parties propounding these Interrogatories, or any of his/her/its/their agents, servants or representatives concerning the subject matter of this litigation? If the answer to this Interrogatory is in the affirmative, set forth in detail the following:

     a.     the time, date and place of each admission;

     b.     the content and substance of each admission;

     c.     the name and address of each person making an admission;

     d.     if the admission was an oral communication, the names and addresses of all persons present when the admission was made;

     e.     if the admission was made in a document, attach a copy thereof to Defendant(s)' answers to these Interrogatories;

     f.     if the admission was made in an oral communication, describe verbatim, to the extent possible, what was said by each party to such oral communication.

37.     Set forth whether Defendant(s) have obtained a statement from the party or parties propounding these Interrogatories. If the affirmative, state:

     a.     if written, attach a true copy of the statement;

     b.     if oral, set forth a verbatim recitation of the statement and advise whether the statement was recorded, the manner of recording and the person who has custody of the statement; and

     c.     the date the statement was obtained.

38.     Set forth whether Defendant(s) have obtained a statement from any person not a party to this action. If your answer is in the affirmative, state:

     a.     Name and address of the person who gave the statement, and date statement obtained;

     b.     if written, whether signed by the person;

     c.     if oral, name and address of the person who obtained the statement, and if recorded, the nature and present custody of recording;

     d.     attach a copy of all said written statements; and

     e.     if oral, set forth completely the substance of said statements.

39.     Please set forth the existence and contents of any insurance agreement pertaining to the issues in the case, insuring the party answering this Interrogatory. This request is made pursuant to *Rule* 4:10-2(b).

40.     State the policy limits of any insurance policies naming Defendant(s) as an insured which cover the claims in this litigation, along with the name of the insurance carrier and policy number, the amount of any applicable deductible, and if the claim is being defended under a Reservation of Rights Agreement or letter, attach a copy of said Reservation of Rights Agreement or letter.

41.    If the party or parties answering these Interrogatories believes that some person, not a party to this action, is in some way responsible for the injuries and/or damages alleged, please set forth the name and address of such person, and the acts or omissions and address of such person, the acts or omissions of said person which caused the injury or damage and the facts which support the belief.

42.    If the person certifying the answers to these Interrogatories did not answer each and every question, then identify each person supplying information used to answer the above Interrogatories and set forth the numbers of the Interrogatories as to which each such person supplied information.

43.    State whether Defendant(s)' agents communicated with any persons or entities that are not parties to this litigation in connection with the subject matter of this lawsuit.  For all such communications that were oral, specify the nature and substance of the communication, the date on which it occurred, the place at which it occurred, and the names, last known addresses, and last known telephone numbers of all persons present.  For all such communications that were written, provide true and accurate copies of each such communication.

44.    State whether at any time, Defendant(s) ever taped and/or digitally recorded any communication with the Plaintiff, whether face-to-face or telephonic.  If so, describe in detail, including but not limited to:

    a.    the identity of each Defendant(s) recorded;
    b.    the date, time, place, and manner in which you recorded the communications;
    c.    the substance of the recorded communications;
    d.    the device used for making such recordings; and
    e.    whether you obtained consent to tape or record such communications. Provide any such recordings.

45.     Set forth in detail, to your knowledge, all notices and warnings received by the Defendant(s) over the past five (5) years from any State and/or Federal and/or Local regulatory authorities who oversee, license, regulate, or discipline your operations, and/or your employees.

46.     Describe, in detail, any complaints to, investigations by, and/or inquiries by the New Jersey Department of Labor with regard to any employment matter concerning Defendant(s) for the past five (5) years.  Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

47.     Describe in detail Defendant(s)' ability to restore archived electronic data relating to the Plaintiff in this matter's employment contained on electronic media such that upon restoration it may be accessed, viewed, exported, or printed.

48.     Describe in detail Defendant(s)' ability to restore archived electronic data relating to the employment of Defendant(s) contained on electronic media such that upon restoration it may be accessed, viewed, exported, or printed.

49.     Identify each Individual with knowledge of:

   a.   The type and location of all hardware used as terminals for email, including servers, personal computers, laptops, PDAs, etc. at Corporate Defendant(s) between January 1, 2009 and the present;
   b.   Computer software operating systems and end user-applications servicing Corporate Defendant(s) between January 1, 2009 and the present;
   c.   All email software and versions which have been used on hardware servicing Corporate Defendant(s) between January 1, 2009 and the present;
   d.   The email file naming conventions and standards;
   e.   The back-up and rotation schedules for all email generated or received by Corporate Defendant(s)' employees between January 1, 2009 and the present;
   f.   Electronic data retention, preservation and destruction policies;
   g.   Diskette, CD, DVD and other removable media labeling standards;
   h.   Structure and organization of all information and technology departments and/or information technology support vendors involved with the computer systems at Corporate Defendant(s);
   i.   The location of the email produced in response to the Plaintiff in this matter's First Request for Production;
   j.   The method of search for the documents and electronic data requested in the Plaintiff in this matter's First Request for Production; and

41

       k.     The date and time of destruction of any electronic data requested in the Plaintiff in this matter's First Request for Production.

50.     Identify each email account each Defendant(s) utilized as an employee of Defendant(s) in the last three years.

51.     Identify and describe in full detail Defendant(s)' policy relating to an employee's complaint of discrimination and/or retaliation.

52.     Describe, in detail, any investigation, determination and/or disciplinary actions taken by Defendant(s) relating to any of the parties in this action in the past ten (10) years.

53.     Identify and describe the facts and details of each instance concerning any of the Defendant(s) receiving any sensitivity training or any training regarding appropriate workplace language and conduct.

54.     Identify and describe the facts and details relating to each instance in which any of the Defendant(s) reprimanded or disciplined Plaintiff while employed at Defendant(s).

55.     Identify and describe the facts and details relating to each instance in which any of the Defendant(s) were reprimanded or disciplined.

56.     Identify and describe in detail Defendant(s)' procedure and/or policy for reprimanding, suspending, and terminating employees.

57.     Describe, in detail, the factual basis for each Affirmative Defense set forth in the Answer.

58.     Describe, in full detail, the facts and circumstances relating to any change in Plaintiff's position and/or job responsibilities.

59.     Describe, in full detail, the facts and circumstances relating to any change in Defendant(s) position and/or job responsibilities.

60.     Identify the last known address, email address, and telephone number for Defendant Indenbom.

61.     Identify the last known address, email address, and telephone number for Defendant Tate.

62.     Identify the last known address, email address, and telephone number for Stacey Lambert.

## INTERROGATORIES TO INDIVIDUAL DEFENDANT(S) ONLY

1.      Identify every paper, writing, memorandum or document of every kind and description of which Individual Defendant(s) has knowledge which is, in any way, intended to support any claim, defense, affirmative defense, or factual allegation, or to be used by Individual Defendant(s) in any manner in this matter, including but not limited to, during the examination of any witness; describe the document as to content and other characteristics, and state the present location of such documents, or in lieu thereof, attach true copies to Individual Defendant(s)'s answers to these Interrogatories. Annex hereto a copy of each said document. For each such document or tangible thing upon which Individual Defendant(s) will rely in support of Individual Defendant(s)'s claims/defenses/affirmative defenses state:

    a.      its description;
    b.      its nature;
    c.      the name and address of person who has custody;
    d.      its location; and
    e.      its condition.

2.      Identify all email addresses used by Individual Defendant(s) the past five (5) years to send and receive emails and identify the internet service provider affiliated with those email addresses.

3.      Identify all cell phone numbers used by Defendant(s) for the past five (5) years as well as carrier and current location of each cell phone. For any such cell phones that are no longer in Individual Defendant(s)' possession, please identify the name and address of the person's whose possession they are in.

43

4.      Has Individual Defendant(s) ever been convicted of a criminal offense?  If so, for each of Individual Defendant(s)'s convictions, identify and set forth in detail:

      a.    the particular offense(s) or crime(s) of which Individual Defendant(s) has been convicted;
      b.    the date of each such conviction;
      c.    the courts in which Individual Defendant(s) was convicted;
      d.    the facts surrounding and underlying each such conviction; and
      e.    the punishment or sentence received.

## DOCUMENT REQUESTS RELATED TO PUNITIVE DAMAGES

1.      All financial statements prepared for the years 2011 through 2021 up to and including the present, setting forth income, expenses, assets, liabilities, and profits of the Corporate Defendant(s).

2.      All tax returns filed by the Corporate Defendant(s) for the years 2011 through 2021, up to and including the present.

3.      All documents evidencing assets of the Corporate Defendant(s).

4.      All documents evidencing the Corporate Defendant(s)' interest in any real estate.

5.      All documents evidencing the financial obligations of the Corporate Defendant(s) and all payments on those obligations.

6.      All documents evidencing judgments against the Corporate Defendant(s) and the amount of those judgments for the years 2011 through 2021, up to and including the present.

7.      All documents evidencing bank accounts held by the Corporate Defendant(s), the location of those accounts, account numbers, and balances of those accounts.

8.      All documents evidencing or setting forth accounts receivable and/or obligation owed by others to the Corporate Defendant(s) for the years 2011 through 2021, up to and including the present.

9.      All documents evidencing payments made by the Corporate Defendant(s) to creditors.

44

10.     All corporate books or any other written memorandum setting forth income received by the Corporate Defendant(s).

11.     All copies of inventories taken by the Corporate Defendant(s) of its property at any time during the years 2011 through 2021, up to and including the present.

## INTERROGATORIES RELATED TO PUNITIVE DAMAGES FOR DEFENDANT(S)

1.     If the Defendant(s) is a corporation, set forth as to each:

    a.     The full name of the corporation;
    b.     Date of incorporation;
    c.     State of incorporation;
    d.     All States in which the Defendant(s) conducts its business;
    e.     All States in which the Defendants has registered to do business;
    f.     The full and correct names and residential address of all stockholders for the last two (2) years;
    g.     The number of shares issued to each of the said stockholders and directors of the corporation during the past two (2) years to include specific dates during which said individuals served as directors;
    h.     Number of shares issued to each of said stockholders;
    i.     The full and correct names and addresses of all officers of the corporation during the past two (2) years to include the specific dates during which said individuals served as officers;
    j.     All trade or fictitious names under which the corporation has conducted its business in the past two (2) years;
    k.     The complete street address of all locations where the Defendant(s) has conducted its business in the past two (2) years and include the specific dates during which it was at each location;
    l.     The name and address of the person who has custody of this corporation's books and records.

2.     Is a majority interest in the corporate stock of the Defendant(s) owned by any individual, corporation or holding company?

3.     If your answer to the preceding interrogatory is in the affirmative, please state for the individual, corporation or holding company with a majority interest in the Defendant(s):

    a.     Name and address;
    b.     State of incorporation;
    c.     The state in which doing business;
    d.     Address of each business office;
    e.     The name and address of each current officer or director;
    f.     The nature of the business in which engaged.

4.      For each facility owned or maintained by the Defendant(s), please state:

      a.      The business address;
      b.      The names and addresses of all current officers of the facility;
      c.      The nature of the business conducted at the facility;
      d.      The dates during which the facility has been owned or maintained by the Defendants' employer;
      e.      The number of individuals presently employed at the facility.

5.      Set forth in detail the name, address, and telephone number of all businesses in which the principals of the Defendant(s) now has an interest and set forth the nature of the interest.

6.      For all bank accounts of the Defendant(s), list the name of the bank, the bank's address, the account number, and the name in which the account is held.

7.      Specifically state the present location of all books and records of the Defendant(s), including checkbooks.

8.      State the name and address of the persons or entities that prepare, maintain, and/or control the business records and checkbooks of the Defendant(s).

9.      List all the physical assets of the Defendant(s) and their location. If any asset is subject to a lien, then state the name and address of the lienholder and the amount due.

10.      Does the Defendant(s) own any real estate?

11.      If the answer for the preceding interrogatory is in the affirmative, please state for each property:

      a.      Name(s) in which property is owned;
      b.      Address of property;
      c.      Date property was purchased;
      d.      Purchase price;
      e.      Name and address of mortgage holder, if any;
      f.      Balance due on mortgage, if any;
      g.      The names and addresses of all tenants and monthly rentals paid by each tenant.

12.      List all motor vehicles owned by the Defendant(s) and state the following for each vehicle:

      a.      Make, model, and year;

46

    b.      License plate number;

    c.      Vehicle identification number;

    d.      If there is a lien on the vehicle, the name and address of the lienholder and the amount due on the lien.

13.      List all accounts receivable due to the Defendant(s), stating the name, address, and amount due on each receivable.

14.      For any transfer of business assets that has occurred within six months from the date of these Interrogatories, specifically identify:

    a.      The nature of the asset;

    b.      The date of the transfer;

    c.      Name and address of the person or entity to whom the asset was transferred; The consideration paid for the asset and the form in which it was paid (check, cash, etc.);

    d.      Explain in detail what happened to the consideration paid for the asset.

15.      Set forth all judgments that have been entered against the Defendant(s) and include the following for each:

    a.      Creditor's name;

    b.      Creditor's attorney;

    c.      Amount due;

    d.      Name of Court;

    e.      Docket number.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Jason Pomaski*

By: /s/ *Peter D. Valenzano*
    PETER D. VALENZANO, ESQ.

Dated: July 21, 2023

47

## **CERTIFICATION**

I hereby certify that I have reviewed the document production request and that I have made or caused to be made a good faith search for documents responsive to the request. I further certify that as of this date, to the best of my knowledge and information, the production is complete and accurate based on ( ) my personal knowledge and/or ( ) information provided by others. I acknowledge my continuing obligation to make a good faith effort to identify additional documents that are responsive to the request and to promptly serve a supplemental written response and production of such documents, as appropriate, as I become aware of them. The following is a list of the identity and source of knowledge of those who provided information to me:

1.

2.

3.

4.

5.

Dated: _____, 2023          By:_____

## CERTIFICATION

I hereby certify that the copies of the reports annexed hereto rendered by proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said experts, whether written or oral, are unknown to me and, if such become later known or available, I shall serve them promptly on the propounding party.

I certify that the foregoing answers to the Interrogatories made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: _____, 2023        By:_____

## NOTICE OF R. 4:14-2(c) VIDEO DEPOSITION OF CORPORATE DEFENDANT(S)

**PLEASE TAKE NOTICE** that pursuant to *Rule* 4:14-2(c) of the New Jersey Rules of Court, Plaintiff Jason Pomaski through his undersigned counsel, will take the deposition upon oral examination of the corporate representative of Corporate Defendants(s) **commencing on January 03, 2024, at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.  Corporate Defendant(s) is required to designate and produce for deposition a person or persons to testify on its behalf.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted before a notary public or other duly authorized officer and will be recorded stenographically and/or by videotape in accordance with Rules of Court.  The deposition shall continue from day to day, weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Jason Pomaski*

By: */s/ Peter D. Valenzano*
     PETER D. VALENZANO, ESQ.

Dated: July 21, 2023

## <u>NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION</u>

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff through her undersigned counsel, will take the deposition upon oral examination of Defendant Indenbom **commencing on January 4, 2024 at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted before a notary public or other duly authorized officer and will be recorded stenographically and/or by videotape in accordance with Rules of Court. The deposition shall continue from day to day, weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Jason Pomaski*

By: */s/ Peter D. Valenzano*
     PETER D. VALENZANO, ESQ.

Dated: July 21, 2023

## NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff through his undersigned counsel, will take the deposition upon oral examination of Defendant Tate **commencing on January 8, 2024, at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted before a notary public or other duly authorized officer and will be recorded stenographically and/or by videotape in accordance with Rules of Court.  The deposition shall continue from day to day, weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Jason Pomaski*

By: /s/ *Peter D. Valenzano*
　　 PETER D. VALENZANO, ESQ.

Dated: July 21, 2023

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-002293-23**

**Case Caption:** POMASKI JASON  VS MICROSOFT
CORPORATIO N
**Case Initiation Date:** 07/21/2023
**Attorney Name:** PETER DOUGLAS VALENZANO
**Firm Name:** MCOMBER MCOMBER & LUBER, PC
**Address:** 54 SHREWSBURY AVE
RED BANK NJ 07701
**Phone:** 7328426500
**Name of Party:** PLAINTIFF : Pomaski, Jason
**Name of Defendant's Primary Insurance Company**
**(if known):** Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?**  NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Jason Pomaski?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/21/2023
Dated

/s/ PETER DOUGLAS VALENZANO
Signed